[Cite as *Candlewood Custom Homes, Inc. v. Saunders*, 2026-Ohio-2038.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

CANDLEWOOD CUSTOM HOMES, INC.,    :

    Plaintiff-Appellee and    :    CASE NO. 25CA12
    Cross-Appellant,
                              :

    v.
                              :

BRIAN SAUNDERS, et al.,        DECISION AND JUDGMENT ENTRY
                              :

    Defendants-Appellants and
    Cross-Appellees.        :

_____

APPEARANCES:

Brian S. Stewart, Circleville, Ohio, for appellants.

Joel E. Sechler, Columbus, Ohio, for appellee.

_____
CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:5-27-26
ABELE, J.

{¶1} This is an appeal from a Pickaway County Common Pleas Court judgment that awarded Candlewood Custom Homes, Inc., plaintiff below and appellee/cross-appellant herein, damages in the amount of $20,544.

{¶2} Brian and Melissa Saunders, defendants below and appellants/cross-appellees herein, assign the following errors for review:

        FIRST ASSIGNMENT OF ERROR:

        "THE TRIAL COURT ERRED BY DENYING
        DEFENDANTS' MOTION FOR A NEW TRIAL, FILED ON
        OCTOBER 23, 2024."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY DENYING
DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT,
FILED ON OCTOBER 23, 2024."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY ADOPTING PORTIONS
OF THE MAGISTRATE'S DECISIONS OF MARCH 6,
2024 AND JULY 30, 2024 WHICH HELD
DEFENDANTS' [SIC] LIABLE FOR DAMAGES FOR
UNJUST ENRICHMENT."

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY ADOPTING PORTIONS
OF THE MAGISTRATE'S DECISION OF MARCH 6,
2024 WHICH DENIED DEFENDANTS' CLAIM FOR
BREACH OF CONTRACT."

FIFTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY ADOPTING PORTIONS
OF THE MAGISTRATE'S DECISION OF MARCH 6,
2024 WHICH DENIED DEFENDANTS' CLAIM FOR
SLANDER OF TITLE."

{¶3} Candlewood assigns the following errors for review:

FIRST CROSS-ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION IN
ADOPTING THE PORTION OF THE MAGISTRATE'S
JULY 30, 2024 DECISION REDUCING THE UNJUST
ENRICHMENT AWARD AGAINST BRIAN AND MELISSA
SAUNDERS (THE 'SAUNDERS') AND IN FAVOR OF
CANDLEWOOD CUSTOM HOMES, INC. ('CANDLEWOOD')
BY $5,000."

SECOND CROSS-ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION BY
DENYING CANDLEWOOD'S MOTION FOR PREJUDGMENT
INTEREST."

{¶4} In 2018, the parties entered into a written agreement

for the construction of appellants' home.  The agreement
provided, in part, that (1) the estimated cost to build the home
would be $346,500, and (2) appellee would manage the
construction project in exchange for a $55,000 management fee.

{¶5} In July 2020, the parties' relationship soured, and
appellee stopped work on the home.

{¶6} Appellee later filed a complaint against appellants
that asserted claims for breach of contract, unjust enrichment,
and fraudulent inducement.[1]  Appellee additionally sought to
foreclose on a mechanic's lien.

{¶7} Appellants answered and filed counterclaims and a
third-party complaint against Mark Myers, appellee's sole
shareholder.  Appellants asserted counterclaims for breach of
contract, unjust enrichment, breach of duty to perform in a
workmanlike manner, and slander of title.  Appellants' third-
party complaint against Myers sought to hold him jointly and
severally liable with appellee.

{¶8} In January 2024, the trial court's magistrate held a
bench trial.  After the trial, the magistrate issued a decision
and recommended that the trial court (1) deny both parties'
claims for breach of contract, (2) deny appellants' remaining
claims, (3) declare the mechanic's lien invalid, and (4) grant

---

[1] Appellee later abandoned its fraudulent inducement claim.

appellee damages for unjust enrichment.  The magistrate recommended that the court award appellee $25,544 in damages, less the value of "punch-out" work, which the magistrate left to be determined after an additional hearing.

{¶9} After the additional hearing, the magistrate reduced appellee's damage award for unjust enrichment by $5,000, the amount that the magistrate determined to be the value of the punch-out work.  The magistrate thus determined that appellee is entitled to $20,544 in damages for its unjust enrichment claim.

{¶10} Both parties filed objections to the magistrate's decision.  On October 1, 2024, the trial court overruled the parties' objections and adopted the magistrate's decision.  The court first pointed out that the parties did not support their objections with a transcript of the proceedings held before the magistrate.  The court stated that without a transcript, it must presume the regularity of the proceedings.  The court thus adopted the magistrate's factual findings, except for a finding that Myers, as opposed to appellee, is entitled to damages for unjust enrichment.

{¶11} The trial court additionally overruled the parties' objections to the magistrate's conclusions of law.  The court determined that the magistrate correctly applied the law to the facts.  The court thus adopted the magistrate's decision and awarded appellee $20,544.

{¶12} Appellee subsequently filed a motion for prejudgment interest.

{¶13} Shortly thereafter, appellants filed a motion for a new trial under Civ.R. 59(A) or, alternatively, for relief from judgment under Civ.R. 60(B)(5).  Appellants asserted that the court should either grant a new trial or grant relief from judgment.  Appellants alleged that they were entitled to a new trial or to relief from judgment because the magistrate should have disqualified herself from presiding over the trial due to a $100 contribution that she made to the campaign of appellants' counsel's election opponent in the 2024 Republican primary for a seat in the Ohio House of Representatives.

{¶14} On December 10, 2024, the trial court overruled appellants' motion for a new trial or for relief from judgment. The court did not agree with appellants that the magistrate should have disqualified herself from presiding over the trial due to the $100 campaign contribution.

{¶15} Later, the trial court denied appellee's motion for prejudgment interest.  The court determined that R.C. 1343.03(C)(1) applied to appellee's request for prejudgment interest and concluded that appellee did not satisfy the statutory requirements to be entitled to prejudgment interest. The court thus denied appellee's motion for prejudgment interest.  This appeal followed.

I

{¶16} We initially observe that appellants' brief does not separately argue the first and second assignments of error. App.R. 16(A)(7) requires an appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  App.R. 12(A)(2) permits us to "disregard an assignment of error presented for review if the party raising it . . . fails to argue the assignment separately in the brief, as required under App.R. 16(A)."

{¶17} Consequently, in light of appellants' failure to argue each assignment separately in the brief, we would be well within our discretionary authority to summarily overrule appellants' first and second assignments of error.  *See Mtge. Electronic Registrations Sys. v. Mullins*, 2005-Ohio-2303, ¶ 22 (4th Dist.). We generally prefer, however, to decide cases on their merits rather than procedural technicalities.  *See DCI Rentals, LLC v. Sammons*, 2024-Ohio-1962, ¶ 7, fn. 2 (4th Dist.); *see also Barksdale v. Van's Auto Sales, Inc.,* 38 Ohio St.3d 127, 128 (1988) (noting that a "basic tenet of Ohio jurisprudence [is] that cases should be determined on their merits and not on mere procedural technicalities").  We will therefore address

appellants' first and second assignments of error, but, for ease of discussion, we consider them separately.

## II

{¶18} In their first assignment of error, appellants assert that the trial court erred by denying their motion for a new trial.  Appellants contend that they are entitled to a new trial pursuant to (1) Civ.R. 59(A)(1), which allows a court to grant a new trial based upon an "[i]rregularity in the proceedings of the court," or (2) Civ.R. 59(A)'s catch-all provision, "for good cause shown."

## A

{¶19} When "a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court."  *Rohde v. Farmer,* 23 Ohio St.2d 82 (1970), paragraph one of the syllabus; *accord Harris v. Mt. Sinai Med. Ctr.,* 2007-Ohio-5587, ¶ 35. When, however, "a new trial is granted by a trial court, for reasons which involve no exercise of discretion but only a decision on a question of law, the order granting a new trial may be reversed upon the basis of a showing that the decision was erroneous as a matter of law."  *Rohde,* paragraph two of the syllabus; *see also Sydnor v. Qualls*, 2016-Ohio-8410, ¶ 41 (4th Dist.).

{¶20} Civ.R. 59(A)(1) authorizes a trial court to grant a new trial based upon an "[i]rregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial[.]"  Ohio appellate courts routinely state that "Civ.R. 59(A)(1) provides a trial court with discretion to grant a new trial when an irregularity in a court proceeding prevents a party from having a fair trial."  *Wright v. Suzuki Motor Corp.*, 2005-Ohio-3494, ¶ 114 (4th Dist.); *see Westfield Ins. v. Chapel Elec. Co. LLC*, 2024-Ohio-2736, ¶ 134 (2d Dist.); *Wood v. Harborside Healthcare*, 2012-Ohio-156, ¶ 17 (8th Dist.).  Appellate courts thus review trial court decisions regarding a Civ.R. 59(A)(1) new trial motion for an abuse of discretion.  *See Koch v. Rist*, 89 Ohio St.3d 250, 252 (2000) (reviewing a new trial motion under Civ.R. 59(A)(1) and the catch-all provision for an abuse of discretion);[2] *Gilbert v. Welter*, 2025-Ohio-4887, ¶ 30 (1st Dist.); *Gallagher v. Fast*, 2024-Ohio-1003, ¶ 16 (9th Dist.); *Waechter v. Laser Spine Institute, LLC*, 2023-Ohio-3715, ¶ 34

---

[2] We observe that in *Jones v. Cleveland Clinic Found.*, 2020-Ohio-3780, ¶ 28-33, the court seemingly independently reviewed whether an irregularity occurred that warranted a new trial under Civ.R. 59(A)(1).  Yet the court's opinion did not explicitly state whether the court applied a de novo or an abuse-of-discretion standard of review to its review of the Civ.R. 59(A)(1) new trial motion.  Absent more explicit guidance, we will continue to apply the abuse-of-discretion standard of review to Civ.R. 59(A)(1) new trial motions.

(8th Dist.); *Cullimore v. Cullimore*, 2022-Ohio-3208, ¶ 44 (4th Dist.).

{¶21} Civ.R. 59(A) also contains a catch-all provision that gives a trial court discretion to grant a party a new trial "for good cause shown."  A trial court's decision regarding a motion for a new trial based upon the catch-all provision is a discretionary decision that a reviewing court will not disturb absent an abuse of discretion.  *See Jones v. Cleveland Clinic Found.*, 2020-Ohio-3780, ¶ 33.

{¶22} Accordingly, we review the trial court's decision regarding appellants' motion for a new trial under Civ.R. 59(A)(1) and the catch-all provision for an abuse of discretion. A decision constitutes an abuse of discretion when it is unreasonable, arbitrary, or unconscionable.  *State ex rel. Hicks v. Adams Cty. Bd. of Elections*, 2025-Ohio-4582, ¶ 23.  Moreover, when applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court.  *Whitt v. Wolfinger*, 2015-Ohio-2726, ¶ 13 (4th Dist.), citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

B

{¶23} In the case at bar, appellants assert that the trial court abused its discretion by determining that the magistrate's failure to disqualify herself from hearing the matter did not constitute an irregularity in the proceeding or good cause to

warrant a new trial.

{¶24} "In the context of a motion for new trial, an 'irregularity' is a departure from the due, orderly, and established mode of proceeding, whereby a party, through no fault of his own, is deprived of some right or benefit otherwise available to him." *Gill v. Grafton Corr. Inst.*, 2011-Ohio-4251, ¶ 34 (10th Dist.). "The rule preserves the integrity of the judicial system when the presence of serious irregularities in a proceeding could have a material adverse effect on the character of and public confidence in judicial proceedings." *Wright v. Suzuki Motor Corp.*, 2005-Ohio-3494, ¶ 114 (4th Dist.).

{¶25} A magistrate's failure to disqualify himself or herself in accordance with the mandatory disqualification provisions of the Code of Judicial Conduct may constitute an irregularity that warrants a new trial. *See James v. James*, 101 Ohio App.3d 668 (2d Dist. 1995). As relevant here, Jud.Cond.R. 2.11(A)(1) requires a judge or magistrate to "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including" in circumstances when "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer. . . ."[3]

---

[3] "As judicial officers, both full- and part-time magistrates appointed by judges in municipal, common pleas, or appellate courts are subject to the Code of Judicial Conduct. Jud.Cond.R., Application." Board of Professional Conduct Opinion No. 2018-04, at 2.

**{¶26}** In the case sub judice, appellants first contend that Jud.Cond.R. 2.11(A)(1) required the magistrate to disqualify herself because a reasonable person would have questioned the magistrate's impartiality due to the $100 campaign contribution that she made to appellants' counsel's opponent in the 2024 Republican primary. Appellants assert that the magistrate's failure to disqualify herself constituted an irregularity that warrants a new trial. Appellants thus contend that the trial court abused its discretion by overruling their motion for a new trial.

**{¶27}** "'The proper test for determining whether a judge's participating in a case presents an appearance of impropriety is . . . an objective one.'" *In re Disqualification of Gallagher*, 2024-Ohio-6136, ¶ 45, quoting *In re Disqualification of Lewis*, 2004-Ohio-7359, ¶ 8. Under this test, "'[a] judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality.'" *Id.*, quoting *Lewis* at ¶ 8.

**{¶28}** To support their argument that the magistrate was required to disqualify herself to avoid an appearance of impropriety, appellants cite *James*, 101 Ohio App.3d 668, and *In re Disqualification of Miller*, 2022-Ohio-4674. In *James*, defense counsel and the magistrate who presided over the

proceedings previously practiced law together.  The appellate court reversed the trial court's decision that had denied the appellant's motion for a new trial based upon an irregularity in the proceedings.

{¶29} The *James* court noted that former Canon 3(C) of the Code of Judicial Conduct required a judicial officer to "'disqualify himself in a proceeding in which his impartiality might reasonably be questioned.'"  *James*, 101 Ohio App.3d at 676, quoting former Jud.Cond.Canon 3(C).  The court noted that this provision required disqualification when a reasonable person, with knowledge of all the circumstances, would reasonably question the judicial officer's impartiality.  *Id.*

{¶30} The *James* court also observed that former Canon 3(C)(1)(b) of the Code of Judicial Conduct required a judicial officer to "disqualify himself from hearing a case in which his impartiality might reasonably be questioned, including a situation where 'a lawyer with whom he previously practiced law served during such association as a lawyer on the matter.'" *Id.*, quoting former Jud.Cond.Canon 3(C)(1)(b).  The court explained that the Code of Judicial Conduct recognized that "if a judge were to hear a case that was handled by the judge's former legal associate during the time of their association, the ability of the judge to be impartial would reasonably be questioned."  *Id.*  The court thus indicated that

disqualification in this situation was mandatory "to avoid suspicion of the fairness and the integrity of the judicial process that might result from the judge's involvement in such a case." *Id.*

{¶31} The *James* court additionally concluded that the "general disqualification standard" contained in former Canon 3(C) likewise required the magistrate to disqualify himself. The court clarified, however, that a judicial officer need not "disqualify himself every time a former associate appears before him." *Id.* at 677. Instead, the court indicated that disqualification in this situation involves considering "the totality of the facts surrounding the association . . . including the nature and extent of the prior association, the length of time since it has been terminated, and any tangential personal association that may have sprung from the professional association." *Id.*

{¶32} Thus, the *James* court determined that the totality of the facts surrounding the association between the magistrate and the former associate indicated that the magistrate should have disqualified himself. The court found that only seven months had elapsed since the prior association ended and that this amount of time was "not a sufficient lapse in time between the time that the [magistrate] practiced law with [the attorney] and the time that he acted in a formal judicial capacity in the

case."  *Id.*  The court further observed that "[t]he association

clearly had not been severed in the eyes of the public, as

evidenced by the advertisement for their law firm, which ran

throughout the entire year of 1992."  *Id.*

{¶33} The *James* court thus decided "that the public's

confidence in the [magistrate]'s impartiality in this case has

been undermined to an extent requiring reversal of the result"

and that disqualification was mandatory.  *Id.*  The court also

recognized that nothing in the record "suggest[ed] that the

[magistrate]'s prior association with defense counsel actually

influenced his disposition of the case in any way."  *Id.*  The

court nevertheless determined that "the *appearance* of

impartiality . . . ha[d] been compromised to an impermissible

extent."  (Emphasis in original.)  *Id.*  The court therefore

concluded that the magistrate's failure to disqualify himself in

accordance with the mandatory disqualification provisions of the

Code of Judicial Conduct constituted an irregularity that

warranted a new trial.  Consequently, the court determined that

the trial court abused its discretion by denying the appellant's

motion for a new trial.

{¶34} We do not, however, agree with appellants that *James*

dictates the outcome in the case at bar.  *James* involved a

different set of facts than those present in the case sub

judice.  In *James*, the magistrate who presided over the

proceedings previously practiced law with one of the lawyers involved in the case. The case at bar involves a magistrate's $100 campaign contribution to appellants' counsel's election opponent. We do not believe that *James* supports an argument that the magistrate in the case at bar was required to disqualify herself and that her failure to do so constituted an irregularity that warrants a new trial.

{¶35} Appellants additionally contend that *Miller*, 2022-Ohio-4674, shows that the magistrate was required to disqualify herself. In *Miller*, the court recognized that it had decided disqualification requests that involve "'political and campaign issues . . . on a case-by-case basis.'" *Id.* at ¶ 5, quoting *In re Disqualification of Burt*, 2015-Ohio-5670, ¶ 6. The court observed that "[u]nder longstanding precedent, it is unreasonable to question a judge's impartiality merely because counsel or a litigant contributed to the judge's election campaign or because a lawyer campaigned for the judge's election opponent." *Id.* at ¶ 5, citing *In re Disqualification of Breaux*, 2017-Ohio-7374, ¶ 10.

{¶36} The *Miller* court further stated, however, that certain "political circumstances" may require disqualification "to avoid an appearance of impropriety." *Miller*, 2022-Ohio-4674, at ¶ 6. For instance, "'[w]hen a lawyer's campaign activities evidence a substantial political relationship with a judge,

disqualification is warranted during the campaign fundraising period.'" *Id.*, quoting Board of Professional Conduct Opinion No. 2014-1.[4]

{¶37} In the case at bar, appellants contend that *Miller* means that "a magistrate must be disqualified during a campaign cycle in which that magistrate donated money against the attorney appearing in front of her." Appellants' argument, however, seems to overlook the important qualifying language in *Miller* that the campaign activity must evidence "'a substantial political relationship with a judge.'" *Id.*, quoting Board of Professional Conduct Opinion No. 2014-1. Thus, even though we agree that *Miller* recognized that judges must disqualify themselves "'[w]hen a lawyer's campaign activities evidence a substantial political relationship with a judge,'" the facts in the case at bar do not reveal a substantial political

---

[4] The Advisory Opinion lists several factors that are "relevant to determining if a lawyer's campaign activity creates a substantial political relationship with the judge," such as "[a]ny political ties between the lawyer and judge occurring outside the campaign relationship" and

> the length and level of campaign involvement, including whether the lawyer has campaign management responsibilities, the extent of the lawyer's fundraising activities, whether the lawyer's name appears on solicitation letters, emails, and the like, whether the election is contested, and the type of election (statewide, multi-county, or local).

Opinion No. 2014-1, at 5.

The Advisory Opinion further suggests that "[a] lawyer's title in a judicial campaign may be indicative of a substantial political relationship with the judge, but is not a determining factor in a disqualification analysis."

relationship between the magistrate and appellants' counsel's primary opponent. Instead, the facts indicate that the magistrate contributed $100 to appellants' counsel's primary opponent. Nothing about this de minimis campaign contribution suggests a substantial political relationship so as to mandate the magistrate's disqualification. *See In re Disqualification of Wallace*, 2019-Ohio-5452, ¶ 7 ("the agency's attorney's $100 contribution to Judge Wallace's campaign does not create any inference of an appearance of impropriety.").

2

{¶38} Appellants also assert that Jud.Cond.R. 2.11(A)(1) required the magistrate to disqualify herself because her $100 campaign contribution suggested that she had "a negative opinion" of their lawyer and, hence, "a personal bias or prejudice" concerning their lawyer.

{¶39} We recognize that preserving "public confidence in the integrity of the judicial system is vitally important," and that "[a]n appearance of bias can be just as damaging to public confidence as actual bias." *In re Disqualification of Murphy*, 2005-Ohio-7148, ¶ 6. We further observe, however, that "'[a] judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions.'" *In re Disqualification of Saffold*, 2006-Ohio-7225, ¶ 11, quoting *In re Disqualification of*

*George,* 2003-Ohio-5489, ¶ 5.

> The term "bias or prejudice" "implies a hostile feeling
> or spirit of ill-will or undue friendship or favoritism
> toward one of the litigants or his attorney, with the
> formation of a fixed anticipatory judgment on the part
> of the judge, as contradistinguished from an open state
> of mind which will be governed by the law and the facts."

*In re Disqualification of O'Neill*, 2002-Ohio-7479, ¶ 14, quoting

*State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956),

paragraph four of the syllabus.

{¶40} "A determination of whether a judge is biased or

prejudiced is based on the judge's words and/or actions and

whether those words and/or actions convey that the judge is

predisposed to a particular outcome of a case."  *In re*

*Disqualification of Gallagher*, 2024-Ohio-6136, ¶ 43.  Thus,

"'[a]llegations that are based solely on hearsay, innuendo, and

speculation . . . are insufficient to establish bias or

prejudice.'"  *In re Disqualification of Breaux*, 2017-Ohio-7374,

¶ 11, quoting *In re Disqualification of Flanagan*, 2009-Ohio-

7199, ¶ 4.

{¶41} In the case sub judice, appellants did not present any

specific evidence to suggest that the magistrate exhibited

hostile feelings, a spirit of ill-will, or undue favoritism so

as to require disqualification.  They assert that the

magistrate's act of contributing $100 to their lawyer's

opponent's campaign evidences the magistrate's bias or

prejudice.  Appellants do not cite any authority for this proposition, however.

{¶42} Additionally, the supreme court appears to have rejected the proposition that a party may establish the level of bias or prejudice necessary for disqualification through supposition.  *See generally In re Disqualification of Hurley*, 2014-Ohio-5874, ¶ 7 ("absent some evidence of bias, the fact that a party may have opposed a judge's bid for elected office is insufficient to require the judge's disqualification"); *In re Disqualification of Osowik*, 2006-Ohio-7224, ¶ 6 ("The fact that the defendant may have opposed the judge's bid for elected office is insufficient to warrant disqualification, absent some evidence of actual bias."); *In re Disqualification of Cleary*, 77 Ohio St.3d 1246, 1247 (1996) ("Affiant speculates that his support of Judge Cleary's opponent was the cause of the adverse ruling on the motion for a continuance (see paragraphs 1 and 7 of the affidavit), but he fails to substantiate this assertion."); *In re Disqualification of Krueger,* 74 Ohio St.3d 1267, 1268 (1995) ("Affiant has failed to demonstrate the existence of bias or prejudice based on the fact that she and Judge Krueger were opponents in the previous election").

{¶43} Consequently, we do not believe that appellants have established that the magistrate's failure to disqualify herself constituted an irregularity or good cause so as to warrant a new

trial.  We therefore disagree with appellants that the trial court abused its discretion by denying their motion for a new trial.

C

{¶44} Within their first assignment of error, appellants further argue that the trial court erred and abused its discretion by independently investigating campaign contributions made to another candidate, evidence that neither party had submitted.

{¶45} Even if we assume for purposes of argument that the trial court improperly considered outside evidence, we do not believe that appellants can establish that this alleged error affected the outcome of the proceedings.  *See* App.R. 12(B) (requiring affirmance when "the trial court committed no error prejudicial to the appellant"); Civ.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

{¶46} Accordingly, based upon the foregoing reasons, we overrule appellants' first assignment of error.

III

{¶47} In their second assignment of error, appellants assert that the trial court abused its discretion by denying their Civ.R. 60(B)(5) motion for relief from judgment.  They assert

that the magistrate's failure to disqualify herself constitutes "any other reason justifying relief from the judgment."

{¶48} A trial court has discretion to grant a party relief from judgment under Civ.R. 60(B).  Thus, an appellate court will not reverse a trial court's decision regarding a Civ.R. 60(B) motion for relief from judgment unless the court abused its discretion.  *See Lundeen v. Turner*, 2022-Ohio-1709, ¶ 11, citing *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 21 (1988) (noting that the "court reviews a decision denying a Civ.R. 60(B) motion for an abuse of discretion").

{¶49} To prevail on a motion under Civ.R. 60(B), the movant must demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted, (2) the party is entitled to relief under one of the grounds in Civ.R. 60(B)(1)-(5), and (3) the motion is made within a reasonable time.  *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 150 (1976).  A court must overrule the motion if the moving party fails to establish any of these requirements.  *Rose Chevrolet*, 36 Ohio St.3d at 20.

{¶50} In the case sub judice, appellants assert that they are entitled to relief under the ground specified in Civ.R. 60(B)(5).  That provision permits a court to relieve a party from a final judgment for "any other reason justifying relief from the judgment."  Civ.R. 60(B)(5).

{¶51} We, however, do not believe that the trial court abused its discretion by denying appellants' Civ.R. 60(B)(5) motion for relief from judgment. As we explained in our discussion of appellants' first assignment of error, appellants did not establish that the magistrate was required to disqualify herself from hearing the matter. Thus, appellants have not demonstrated any reason that would justify relief from the judgment.

{¶52} Accordingly, based upon the foregoing reasons, we overrule appellants' second assignment of error.

IV

{¶53} In their third assignment of error, appellants assert that the trial court erred by adopting the magistrate's decision that found appellants liable for unjust enrichment. Appellants assert that the trial court found that a valid contract existed, and, thus, the court could not award damages for unjust enrichment. Appellants further argue that the trial court's judgment to award appellee damages for unjust enrichment constitutes an error of law subject to de novo review.

{¶54} We initially do not agree with appellants that our standard of review for this issue is de novo. The trial court's judgment arose from its adoption of the magistrate's decision. Appellants filed objections to the magistrate's decision, but appellants did not support their objections with a transcript of

the proceedings.

{¶55} When a matter is tried to a court magistrate, Civ.R. 53(D)(3)(b)(iii) requires an objection to a factual finding to "be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available."  If an objecting party fails to submit a transcript or affidavit, "a trial court is required to accept the magistrate's findings of fact and may only determine the legal conclusions drawn from those facts." (Citations omitted.)  *Hopkins v. Hopkins*, 2014-Ohio-5850, ¶ 25 (4th Dist.); *accord M.S. v. J.S.*, 2020-Ohio-5550, ¶ 9 (6th Dist.), quoting *In re M.W.*, 2012-Ohio-2959, ¶ 6 (6th Dist.) (stating that "[w]ithout a transcript, 'the trial court is required to accept the magistrate's findings of fact as true, and is permitted to examine only the legal conclusions based on those facts' "); *Allread v. Allread*, 2011-Ohio-1271, ¶ 18 (2d Dist.), quoting *Dayton Police Dept. v. Byrd*, 2010-Ohio-4529, ¶ 8 (2d Dist.) (if the objecting party does not file a proper transcript of all relevant testimony or an affidavit of evidence, "'a trial court's review is necessarily limited to the magistrate's conclusions of law'").

{¶56} An objecting party's failure to object to a magistrate's decision in accordance with Civ.R. 53(D)(3)(b) further limits appellate review.  Civ.R. 53(D)(3)(b)(iv) states,

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

{¶57} Consequently, if a party fails to support objections to a magistrate's factual finding with a transcript or affidavit, "that party waives any appeal as to those findings other than claims of plain error." *State ex rel. Pallone v. Ohio Court of Claims*, 2015-Ohio-2003, ¶ 11, citing Civ.R. 53(D)(3)(b)(iv); *compare State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730 (1995) (when a party fails to file a transcript of evidence or a Civ.R. 53(D)(3)(b)(iii) affidavit, appellate review is limited to determining whether the trial court abused its discretion when applying the law to the facts). The lack of a transcript or affidavit ordinarily does not, however, "'preclude appellate review of a legal determination, so long as the appellant complied with the objection requirements of the applicable magistrate rule.'" *Redmond v. Wade*, 2017-Ohio-7192, ¶ 16 (4th Dist.), quoting App.R. 9 2013 Staff Notes.

{¶58} We additionally observe that Civ.R. 53(D)(3)(b)(ii) requires objections to be "specific and state with particularity all grounds for objection." The failure to state with particularity all grounds for objection results in a "[w]aiver"

of those particular issues on appeal.  *See Redmond*, 2017-Ohio-
2877, at ¶ 31 (4th Dist.); *accord State ex rel. Muhammad v.
State,* 2012-Ohio-4767, ¶ 3 (a party waives an argument on appeal
if the party failed to specifically raise that issue in
objections to the magistrate's decision).

{¶59} In the case at bar, appellants did not object to the
magistrate's decision based upon the assertion raised in their
third assignment of error, i.e., the magistrate found the
existence of a valid contract, which precluded an award of
damages for unjust enrichment.  Instead, appellants objected to
the magistrate's unjust enrichment award based upon the argument
that appellee did not complete the services required under the
contract, and, thus, it would not be unjust to deny appellee
damages for any benefit conferred.  Consequently, because
appellants did not state with particularity the ground now
asserted on appeal, that issue has been waived for purposes of
appeal.  *See* Civ.R. 53(D)(3)(b)(iv).

{¶60} We may, however, arguably consider appellants' third
assignment of error for plain error.  *See id.*  For the plain-
error doctrine to apply, the party claiming error must establish
(1) that "'an error, i.e., a deviation from a legal rule'"
occurred, (2) that the error was "'an "obvious" defect in the
trial proceedings,'" and (3) that this obvious error affected
substantial rights, i.e., the error "'must have affected the

outcome of the trial.'" *State v. Rogers*, 2015-Ohio-2459, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002); *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982) ("A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse [e]ffect on the character and public confidence in judicial proceedings.").

**{¶61}** The plain-error doctrine is not, however, readily invoked in civil cases. Instead, an appellate court "must proceed with the utmost caution" when applying the plain-error doctrine in civil cases. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). The Ohio Supreme Court has set a "very high standard" for invoking the plain-error doctrine in a civil case. *Perez v. Falls Financial, Inc.*, 87 Ohio St.3d 371, 375 (2000). Thus, the doctrine is sharply limited to

> the *extremely rare* case involving *exceptional* circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.

(Emphasis in original.) *Goldfuss*, 79 Ohio St.3d at 122-23; *accord Jones v. Cleveland Clinic Found.*, 2020-Ohio-3780, ¶ 24; *Gable v. Gates Mills*, 2004-Ohio-5719, ¶ 43.

**{¶62}** In the case before us, we do not believe that the trial court erred by awarding appellee damages for unjust

enrichment.  In awarding appellee damages for unjust enrichment, the trial court relied on our decision in *Clifton v. Johnson*, 2019-Ohio-2702 (4th Dist.).  In that case, we stated the law applicable to unjust enrichment claims as follows:

> "An unjust enrichment claim is an alternative to a breach of contract claim."  *MRI Software, L.L.C. v. W. Oaks Mall FL, L.L.C.*, 8th Dist. Cuyahoga No. 105846, 2018-Ohio-2190, 116 N.E.3d 694, ¶ 34.  Consequently, "[w]hen an express contract exists, a party must pursue a breach of contract action."  *Loop v. Hall*, 4th Dist. Scioto No. 05CA3041, 2006-Ohio-4363, ¶ 23.  For a contract to exist, each party must consent to the terms of the contract, the parties must have a meeting of the minds, and the contract must be definite and certain. *Episcopal Retirement Homes, Inc.,* 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991), *Farmers Comm. Co. v. Burks*, 130 Ohio App.3d 158, 163-64, 719 N.E.2d 980 (3rd Dist. Sept. 30, 1998).  "[T]he elements of a meeting of the minds [are] an offer, acceptance, and consideration." *Wandling v. Matthews*, 4th Dist. Gallia No. 00CA12, 2001-Ohio-2512, *3, *see Noroski v. Fallet*, 2 Ohio St.3d 77, 442 N.E.2d 1302 (1982).
> However, "[w]hen a contract fails for a lack of a 'meeting of the minds,' equity should be imposed to prevent an unjust enrichment." *Myers v. Good*, 4th Dist. Ross No. 06CA2939, 2007-Ohio-5361, ¶ 12, citing *Hailey v. MedCorp., Inc.,* 6th Dist. Lucas App. No. L-05-1238, 2006-Ohio-4804, ¶ 17-18, *Enright v. CSR Enterprises*, 6th Dist. Wood No. WD-84-52, 1984 WL 14426.

*Id.* at ¶ 10-11.

{¶63} In the case sub judice, the trial court was not convinced that the parties had "a genuine meeting of the minds." Given this finding, the court did not err, plainly or otherwise, by awarding appellee damages for unjust enrichment.  *See Bender v. Logan*, 2016-Ohio-5317, ¶ 70 (4th Dist.) (a party may seek alternative theories of relief and recover for unjust enrichment

if a contract fails for a lack of a meeting of the minds); *J. Bowers Constr. Co. v. Gilbert*, 2014-Ohio-3576, ¶ 9 (9th Dist.) ("[i]n the absence of a valid contract, a party may still recover under a quasi-contract theory."); *see also Banks v. Nationwide Mut. Fire Ins. Co.*, 2000 WL 1742064, *5 (10th Dist. Nov. 28, 2000) ("if no remedy is available in contract or tort, then the equitable remedy in unjust enrichment may be afforded to prevent injustice").

{¶64} Accordingly, based upon the foregoing reasons, we overrule appellants' third assignment of error.

V

{¶65} In their fourth assignment of error, appellants assert that the trial court erred by concluding that appellants failed to establish their claim for breach of contract based on appellee's alleged failure to perform in a workmanlike manner. Appellants contend that the trial court found that appellee failed to apply the siding in accordance with the manufacturer's specifications and that appellants' experts testified that the installation had numerous defects. Appellants assert that these findings required the trial court to conclude that appellee breached the duty to perform in a workmanlike manner.

{¶66} Appellants recognize, however, that the trial court noted that Mr. Saunders was involved in making decisions regarding the installation and that appellants failed to

mitigate their damages by not having the caulking completed. They contend, however, that any failure to mitigate would relate to the extent of their damages, not to the merits of their claim.

A

{¶67} We first observe that appellants generally objected to the magistrate's legal conclusion that denied their claim for breach of the duty to perform in a workmanlike manner.  Their objection reads, "The Magistrate erred in finding that '[appellants'] claim of breach of duty to perform in a workmanlike manner is denied.'"  Appellants did not present any particular reason to support this objection, and they did not raise the specific issues now raised in their fourth assignment of error regarding the application of the facts to the law. Because appellants did not state with particularity the ground now asserted on appeal, that issue has been waived for purposes of appeal.  *See* Civ.R. 53(D)(3)(b)(iv).  We thus limit our review of the trial court's decision to determining whether the trial court plainly erred by concluding that appellants did not establish that appellee breached the duty to perform in a workmanlike manner.  *See id.*

B

{¶68} "[I]n Ohio, a duty to construct houses in a workmanlike manner using ordinary care is imposed by law on all

home builders." *Jones v. Centex Homes*, 2012-Ohio-1001, ¶ 10.

This duty generally "requires a construction professional to act

reasonably and to exercise that degree of care which a member of

the construction trade in good standing in that community would

exercise under the same or similar circumstances."  (Citations

omitted.)  *Seff v. Davis*, 2003-Ohio-7029, ¶ 19 (10th Dist.).

{¶69} To determine whether a builder breached its duty to

perform in a workmanlike manner, the fact finder must "'assess

fault'" and evaluate whether the builder used "'proper materials

and workmanlike skill and judgment.'"  *Gilham v. Stasiulewicz*,

2010-Ohio-6407, ¶ 48 (7th Dist.), quoting *John Snyder, Inc. v.

Cooper*, 2001 WL 301419, *1 (7th Dist. Mar. 20, 2001), citing

*Mitchem v. Johnson*, 7 Ohio St.2d 66, 73 (1966); *accord Landis v.

William Fannin Builders, Inc.*, 2011-Ohio-1489, ¶ 24 (10th

Dist.).  Additionally, "[a]ny determination of whether the

services were performed in a workmanlike manner must be made in

reference to the actual bargain of the parties."  *Vistein v.

Keeney*, 71 Ohio App.3d 92, 105 (11th Dist. 1990).

{¶70} In the case at bar, we do not believe that the trial

court erred by concluding that appellee did not breach the duty

to perform in a workmanlike manner.  The court found that,

although the builder testified that he did not install the

siding precisely in accordance with the manufacturer's

instruction, he did install it in accordance with Mr. Saunders's

directions.  The court specifically found the builder's testimony more credible than Mr. Saunders's testimony.  The court thus appears to have concluded that appellee did not breach the duty to perform in a workmanlike manner because appellee installed the siding in accordance with the parties' actual bargain, i.e., appellee installed the siding as discussed with Mr. Saunders.  *See Vistein*, 71 Ohio App.3d at 105 ("if the design of the bridge had been dictated by [the client] and the subsequent failure was due solely to the design, then [the contractor] would not be liable under the workmanlike standard").

{¶71} Moreover, we do not agree with appellants that the trial court was required to find a breach based upon their experts' testimonies.  The court did not indicate that it found appellants' experts' testimonies regarding their perceived defects to be dispositive of appellants' claim.  Instead, the court pointed out that the parties presented conflicting expert testimony.  The court noted that appellants' experts "testified to numerous defects."  The court further stated, however, that the builder, also recognized as an expert, testified that his methods were superior to those appellants' experts espoused. The court did not indicate that it found appellants' experts' testimonies regarding the claimed defects to be more persuasive than the builder's expert testimony or otherwise explain how it

weighed appellants' expert's testimonies.  In light of the above findings, we do not believe that the trial court erred, plainly or otherwise, by concluding that appellants failed to establish their claim for breach of the duty to perform in a workmanlike manner.

{¶72} Additionally, because the record supports the court's conclusion that appellants did not establish the elements of the claim, any obvious error that the trial court may have made regarding appellants' failure to mitigate their damages did not seriously affect the basic fairness, integrity, or public reputation of the judicial process.  *See Goldfuss*, 79 Ohio St.3d at 122-23.

{¶73} Accordingly, based upon the foregoing reasons, we overrule appellants' fourth assignment of error.

                            VI

{¶74} In their fifth assignment of error, appellants assert that the trial court erred by denying their claim for slander of title.  They assert that the court found all of the facts necessary to establish a claim for slander of title, yet the court denied their claim due to a finding that appellants did not sustain any damages.  Appellants contend that damages for slander of title include damages for "special pecuniary loss." They assert that attorney fees are a special pecuniary loss and that they thus are entitled to recover "the costs of

litigation."

> "Slander of title is a tort action 'against one who falsely and maliciously defames title to property and causes some special pecuniary damages or loss.' " *Bank of New York Mellon v. Floyd*, 8th Dist. Cuyahoga No. 110248, 2021-Ohio-3736, 2021 WL 4901698, ¶ 58, quoting *Acme Constr. Co. v. Continental Natl. Indemn. Co.*, 8th Dist. Cuyahoga No. 81402, 2003-Ohio-434, 2003 WL 194879, ¶ 46. To succeed, the claimant must prove that "'(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages.'" *Id.*, quoting *Green v. Lemarr*, 139 Ohio App.3d 414, 430-431, 744 N.E.2d 212 (2d Dist.2000).

*Troon Mgt., Ltd. v. Adams Family Trust*, 2023-Ohio-3489, ¶ 31 (4th Dist.).

{¶75} We observe that "'[m]alice is a necessary ingredient in order to entitle plaintiff to recover for slander of title.'" *Buckeye Crude Expl., Inc. v. Ken Miller Supply, Inc.*, 1987 WL 12243, *13 (4th Dist. June 3, 1987), quoting 53 Corpus Jur.Sec. 394, § 274.  Accordingly, a slander-of-title claim ordinarily will not succeed "'if the claim was asserted by defendant in good faith, and if the act complained of was founded on probable cause or was prompted by a reasonable belief, although the statement may have been false.'"  *Id.*, quoting 53 Corpus Jur.Sec. 394, § 274.

{¶76} In the case sub judice, appellants challenge the trial court's conclusion that they could not recover the costs of litigation as special damages.  During the trial, however,

appellants did not request an award of litigation costs or present any evidence regarding the amount of litigation costs. Instead, appellants claimed that they suffered damages due to an inability to refinance their home.  The court rejected appellants' argument by pointing out that they did not present evidence to establish that they "would have been approved at any lower interest rate but for the presence of the mechanic's lien."

{¶77} Moreover, assuming, arguendo, that a prevailing party may recover litigation costs for a slander-of-title claim, the trial court nonetheless properly denied appellants' claim.  As noted above, a successful slander-of-title claim requires the claimant to establish, inter alia, that the statement was made with malice or reckless disregard.  In the case sub judice, the trial court did not determine that appellee acted with malice or reckless disregard.  Instead, the court stated that it "hesitate[d] to fault" appellee.  Thus, in the absence of malice or reckless disregard, appellants' slander-of-title claim could not succeed.

{¶78} Accordingly, based upon the foregoing reasons, we overrule appellants' fifth assignment of error.

VII

{¶79} In its first cross-assignment of error, appellee/cross-appellant argues that the trial court abused its

discretion by adopting the magistrate's decision to reduce its unjust enrichment award by $5,000. Cross-appellant asserts that the court decided to reduce the award by $5,000 based upon its finding that cross-appellant agreed to "waive" the $5,000 payment. Cross-appellant claims that this finding contradicts other findings, such as the court's finding that cross-appellant "only agreed to allow [appellants] to hold back paying the final $5,000 until after punch-out was completed." Cross-appellant states that the facts contained in the magistrate's decision show that cross-appellant did not agree to waive the $5,000 payment but, instead, only agreed to delay the payment. Cross-appellant thus contends that the magistrate's legal conclusion reducing its award by $5,000, and the trial court's adoption of that conclusion, have no factual basis.

**{¶80}** We initially note that "[a] trial court has broad discretion when it fashions an equitable award." *Meridien Mktg. Grp., Inc. v. J & E Bldg. Grp., Inc.,* 2011-Ohio-4872, ¶ 28 (2d Dist.), citing *Jon Harmon Ents. Ltd. v. Kinsey,* 2009-Ohio-5655, ¶ 20-21 (5th Dist.). We therefore review a trial court's damage award for unjust enrichment for an abuse of discretion. *Clifton v. Johnson*, 2019-Ohio-2702, ¶ 17 (4th Dist.); *accord Continuum Transportation Services, Ltd. v. Elite Internatl. Corp. L.L.C.*, 2022-Ohio-3738, ¶ 32 (8th Dist.); *Johnson's Island Property Owners' Assoc. v. Cianciola*, 2021-Ohio-1341, ¶ 49 (6th Dist.);

*see Joseph J. Freed & Assoc., Inc. v. Cassinelli Apparel Corp.*, 23 Ohio St.3d 94, 97 (1986) (reviewing a trial court's balancing of equities for an abuse of discretion).  An "abuse of discretion" implies that the court's attitude is "unreasonable, unconscionable, or arbitrary."  *Smith v. Smith*, 2019-Ohio-899, ¶ 19 (4th Dist.), citing *State v. Adams,* 62 Ohio St.2d 151, 157 (1980).

{¶81} In the case at bar, we do not believe that the trial court abused its discretion by awarding cross-appellant $20,544 in damages for its unjust enrichment claim.  The court found that, when the parties ended their relationship, cross-appellees still owed cross-appellant $26,516 (less a $972 credit for returned trim pieces).  The court further found that this amount included punch-out work.  The court determined, however, that cross-appellant did not complete the punch-out work.  The court thus reduced the award by the value of the punch-out work, which it determined to be $5,000.

{¶82} Moreover, the trial court did not, as cross-appellant claims, conclude that it waived the right to the $5,000 payment for punch-out work.  Instead, the court found that cross-appellant did not complete the punch-out work and, therefore, was not entitled to receive compensation for the uncompleted punch-out work.

**{¶83}** Accordingly, based upon the foregoing reasons, we overrule cross-appellant's first cross-assignment of error.

VIII

**{¶84}** In its second cross-assignment of error, cross-appellant asserts that the trial court abused its discretion by denying its motion for prejudgment interest. Cross-appellant argues that the trial court incorrectly applied R.C. 1343.03(C)(1) when determining whether to award prejudgment interest. Cross-appellant contends that the court instead should have applied R.C. 1343.03(A).

A

**{¶85}** R.C. 1343.03(C) governs the computation of interest for a money judgment rendered in "a civil action that is based on tortious conduct" and "that has not been settled by agreement of the parties." *See State ex rel. Fenstermaker v. Phillips*, 2025-Ohio-2081, ¶ 15 ("R.C. 1343.03(C)(1)(a) provides for the award of prejudgment interest in certain circumstances when a party in a 'civil action that is based on tortious conduct' has failed to make a good-faith effort to settle the case."). This statute does not apply, however, when a civil action is not "based on tortious conduct—i.e., '[a]n act or omission that subjects the actor to liability under the principles of tort law,' *Black's Law Dictionary* (12th Ed. 2024)." *Fenstermaker* at ¶ 15.

{¶86} In the case sub judice, the money judgment did not spring from a civil action based on tortious conduct. A claim for unjust enrichment is not a civil action based on tortious conduct. Instead, a claim for unjust enrichment is an equitable claim "based on quasi-contract." *Kent State Univ. v. Manley*, 2023-Ohio-4650, ¶ 21 (8th Dist.). Thus, R.C. 1343.03(C), by its plain terms, does not apply to cross-appellant's request for prejudgment interest. We therefore agree with cross-appellant that the trial court incorrectly denied its request for prejudgment interest based upon the court's finding that R.C. 1343.03(C) governed cross-appellant's request.

{¶87} The remaining question is whether the trial court erred by failing to award cross-appellant prejudgment interest under R.C. 1343.03(A).

B

{¶88} R.C. 1343.03(A) entitles a creditor to interest

> when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments . . . for the payment of money arising out of tortious conduct or a contract or other transaction.

"The mandatory language of R.C. 1343.03(A) means that the trial court must award prejudgment interest when appropriate." *Water Works Supplies, Inc. v. Grooms Construction, Co.*, 2005-Ohio-1292, ¶ 32 (4th Dist.).

{¶89} In the case sub judice, the parties dispute whether R.C. 1343.03(A) applies to claims for unjust enrichment. Cross-appellant asserts that our decision in *Pickaway Cty. Ross-Co Redi Mix Co. v. Steveco, Inc.*, 1996 WL 54174 (4th Dist. Feb. 6, 1996), demonstrates that R.C. 1343.03(A) applies to claims for unjust enrichment.

{¶90} In *Steveco*, this court upheld a trial court's decision to award a prevailing party prejudgment interest under R.C. 1343.03(A) for an unjust enrichment award when the parties did not dispute the amount due and payable, but only liability for the amount. We observed that R.C. 1343.03(A) entitled a creditor to interest "'when money becomes due and payable upon . . . any book account.'" (Omission in original.) *Steveco*, 1996 WL 54174, at *4 (4th Dist.), quoting R.C. 1343.03(A). We determined that the award of prejudgment interest was appropriate because the amount of damages was clear and certain. We distinguished previous cases that had disallowed prejudgment interest for unjust enrichment claims when the amount of damages was "unclear or uncertain."[5] *Id.; see Advanced Marketing*

_____

[5] We observe that the Ohio Supreme Court rejected the dichotomy between liquidated and unliquidated damages for purposes of breach-of-contract claims. *See Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 116 (1995) ("the focus in these types of cases should not be based on whether the claim can be classified as 'liquidated,' 'unliquidated' or 'capable of ascertainment'"). The court's decision did not, however, suggest that this same rule would apply to unjust enrichment claims. *See Cantwell Mach. Co. v. Chicago Mach. Co.*, 2009-Ohio-4548, ¶ 34 (10th Dist.) ("*Royal Elec.* involved a breach-of-contract claim. Its holding regarding the significance of liquidated versus nonliquidated damages is not relevant to

*Services, Inc. v. Dayton Data Processing*, 1992 WL 41822, \*10
(2nd Dist. Mar. 6, 1992) ("The amount of damages in an unjust
enrichment claim are by their very nature uncertain until the
court determines the amount to which the defendant has benefited
and it would be unjust not to award damages to the plaintiff.").

{¶91} Later cases, however, have reached differing
conclusions. *Compare Thrasher Dinsmore & Dolan, LPA v. Ross*,
2024-Ohio-1594, ¶ 41, fn. 3 (8th Dist.) ("An unjust-enrichment
claim does not support an award of prejudgment interest under
R.C. 1343.03(A)."); *KN Excavation LLC v. Rockmill Brewery LLC*,
2022-Ohio-3414, ¶ 39 (5th Dist.) ("R.C. 1343.03(A) does not
allow for an award of prejudgment interest on a judgment for
unjust enrichment"); *Cantwell Mach. Co. v. Chicago Mach. Co.*,
2009-Ohio-4548, ¶ 31 (10th Dist.) ("a claim of unjust enrichment
does not support an award of prejudgment interest under R.C.
1343.03(A)") *with Zeck v. Sokol*, 2008-Ohio-727, ¶ 43 (9th Dist.)
("That the amount is unliquidated and/or not capable of
ascertainment prior to judgment, as in the case of a claim for
unjust enrichment, does not defeat a claim for prejudgment
interest.").

---

the determinative question in this case: whether R.C. 1343.03(A) allows for
an award of prejudgment interest on a claim for unjust enrichment.").

{¶92} We additionally note that R.C. 1343.03(A) does not state that a creditor is entitled to interest when money becomes due and payable upon a quasi-contract like unjust enrichment, *see Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged*, 15 Ohio St.3d 44, 46 (1984) ("A quasi-contract is a contract implied so as to prevent injustice.  It is a legal fiction that does not rest upon the intention of the parties, but rather on equitable principles in order to provide a remedy" [citations omitted]); s*ee generally State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 2007-Ohio-3831, ¶ 72 (a creditor is not entitled to prejudgment interest under R.C. 1343.03(A) for a prevailing wage claim that arose as a matter of law under a city charter because that type of claim is not listed in the statute).

{¶93} Furthermore, "[p]rejudgment interest is not available pursuant to R.C. 1343.03(A) unless there is an amount due and payable . . ."  (Citations omitted.)  *Worrell v. Multipress, Inc.*, 45 Ohio St.3d 241, 249 (1989); *see also Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 115 (1995) (R.C. 1343.03(A) indicates that "interest commences to run . . . when the claim becomes 'due and payable'").  The phrase "due and payable" connotes "a debt" that is "owed and subject to immediate collection because a specified date has arrived or time has elapsed, or some other condition for collectibility has

been met." *Black's Law Dictionary* (12th ed. 2024); *see RPM, Inc. v. Oatey Co.*, 2005-Ohio-1280, ¶ 68 (9th Dist.) (the phrase "due and payable," as used in R.C. 1343.03(A), indicates that a creditor is entitled to prejudgment interest for a debt that is due); *see generally* 25 *Williston on Contracts* § 66:111, fn. 4 (4th ed.), quoting Restatement of the Law 2d, Contracts § 354, Illustration 9 ("A contracts to build a bungalow for B for $30,000. After completion but before B has paid the final $6,000, B occupies the bungalow but refuses to pay the balance because the workmanship and materials are unsatisfactory. A sues B and recovers only $4,000 on the ground that B's claim entitles him to compensation in the amount of $2,000. The sum of $4,000 was not sufficiently definite to give A a right to interest on it.").

**{¶94}** In the instant case, we do not believe that R.C. 1343.03(A) entitles cross-appellant to prejudgment interest for its unjust enrichment claim. As we noted above, R.C. 1343.03(A) does not state that a creditor is entitled to prejudgment interest for money that is due and payable upon an unjust enrichment claim. The statute lists specific situations that entitle a creditor to prejudgment interest, and cross-appellant's unjust enrichment claim does not fall under any of those situations: it is not a "bond, bill, note, or other instrument of writing," a "book account," a "settlement between

parties," or a verbal contract.  Consequently, nothing in the statute indicates that cross-appellant is entitled to prejudgment interest for its unjust enrichment claim.

{¶95} We further distinguish the case at bar from *Steveco,* 1996 WL 54174, *4 (4th Dist.).  In *Steveco,* at least part of our rationale appears to have been based upon the language in R.C. 1343.03(A) that entitles a creditor to prejudgment interest when money becomes due and payable upon a "book account."  *Id.* at *4. Thus, *Steveco* ostensibly relied, at least in part, upon the statutory language when deciding to uphold an award of prejudgment interest.  Additionally, in *Steveco,* the parties did not dispute the amount owed.  In the case sub judice, however, the parties disputed both liability and the amount owed.  Thus, we do not agree with cross-appellant's assertion that *Steveco* governs and proves its entitlement to prejudgment interest.

{¶96} Accordingly, based upon the foregoing reasons, we overrule cross-appellant's second cross-assignment of error and affirm the trial court's judgment.

                                        JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed. Appellee/cross-appellant shall recover of appellant/cross-appellee the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
     Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.